1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONALD DAVIS,                          No.  2:10-cv-1029 KJM DAD P

12              Petitioner,

13         v.

14   JAMES HAVILAND,                         FINDINGS AND RECOMMENDATIONS

15              Respondent.

16

17         Petitioner is a state prisoner proceeding pro se with an amended petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Therein, petitioner challenges three 2007 prison

19   disciplinary convictions he incurred for smoking, possession of contraband, and possession of

20   obscene material, all on the same day.  He seeks federal habeas relief on the grounds that:  (1)

21   none of his three disciplinary convictions was supported by sufficient evidence; (2) prison

22   officials improperly failed to assign him a staff assistant at his disciplinary hearings; and (3) the

23   procedures for processing prison disciplinary charges violated his rights under the Equal

24   Protection Clause.  Upon careful consideration of the record and the applicable law, the

25   undersigned will recommend that petitioner's application for habeas corpus relief be denied.

26   /////

27   /////

28   /////

                                              1

## I. Background

### A. Disciplinary Conviction for Smoking

On November 30, 2007, Correctional Officer (C/O) T. Doane wrote a rules violation report (RVR) charging petitioner with "smoking policy" in violation of 15 California Code of Regulations (CCR) § 3187.  (ECF No. 24 at 84.)  Therein, C/O Doane alleged as follows:

> On Friday, November 30, 2007, at approximately 1045 hours, I observed Inmate Davis, C-30385, 17-251-L, blow smoke out of his mouth and pass a Lit Cigarette to Inmate CASEY, V-67103, 17-342-U, who took and placed the cigarette in his mouth and inhaled and blew out smoke.  Inmate DAVIS was laying on his bunk.  Inmate CASEY was seated on a plastic bucket next to Inmate DAVIS on bunk 17-251-L.  Inmate CASEY saw me and threw the cigarette on the floor.  I placed Inmate CASEY AND Inmate DAVIS in mechanical restraints and had them escorted away from the area.  Both Inmate CASEY and Inmate DAVIS stated that it was only Tobacco.  The cigarette that was thrown on the floor by Inmate CASEY had a brown Tobacco substance in it.

(Id.)  The disciplinary charge against petitioner was classified as a serious Division F offense.  (Id.)

On December 8, 2007, the prison disciplinary hearing on the November 30, 2007 RVR commenced.  (Id.)  Petitioner received copies of the RVR at least 24 hours in advance of that hearing.  (Id.)  Petitioner did not raise any objections to proceeding with the hearing and stated he was in good health.  (Id. at 85.)  A staff assistant was not assigned on the grounds that petitioner was literate and spoke fluent English, he did not have a documented disability, the issues were not complex, and assistance was "not necessary to comprehend the nature of the charges or the proceedings."  (Id.)  An investigative employee was not assigned to petitioner on the grounds that the issues were not complex and did not require further investigation, petitioner's housing status was not changed, petitioner was able to collect and present evidence necessary for an adequate defense, and a determination had been made that additional information was not necessary for a fair hearing.  (Id.)  Petitioner entered a plea of "not guilty" to the charge and stated merely:  "I don't smoke."  (Id.)

Petitioner's request that C/O Doane appear as a witness at the hearing was granted.  (Id.)  Officer Doane was asked, "Did you positively see Inmate Davis smoking?"  (Id.)  Officer Doane

responded, "I saw him blow smoke out of his mouth, no doubt in my mind it was Inmate Davis, I observed him smoking." (Id.)

The Senior Hearing Officer found petitioner guilty of a violation of 15 CCR § 3187 for the specific act of "smoking." (Id. at 86.) According to the report of the hearing, petitioner's disciplinary conviction was based upon the statements of C/O Doane in the RVR and Doane's testimony at the disciplinary hearing that he observed petitioner smoking. (Id.) Petitioner was assessed a 30-day loss of time credits, a 90-day loss of privileges, and a 90-day loss of Friday visits. (Id.)

**B. Disciplinary Conviction for Possession of Contraband**

On November 30, 2007, C/O Doane wrote an RVR charging petitioner with "contraband" in violation of 15 California Code of Regulations (CCR) § 3006. (Id. at 78.) Therein, C/O Doane alleged as follows:

> On 11-20-07, at approximately 1050 hours, I searched the bed, locker and area around 17-251-L, which housed inmate DAVIS, (C-30385). Inmate Davis was laying on his bunk just prior to my searching the area. I found approximately one and a half cubic feet (over one apple box) of electronic contraband from the area. The contraband was found in his locker, on his bunk, in shelves made of cardboard encasing his T.V. under his bunk in boxes with letters with his name on them and behind his locker. It appeared that Inmate Davis was repairing and or altering electrical equipment. Among the electrical contraband I removed from Inmate Davis' locker was a Motorola adaptor for charging a cell phone. In a shelf drawer among other electrical contraband was a Motorola cell phone head set. The shelf was encasing his T.V. In a bag hanging from his bunk was a Nokia cell phone charger and a Metro PCS head set. The electrical contraband also contained a small circuit board, fuses, wire and solder. One shoe box was packed full of small tobacco containers, each container held different small electrical parts. Inmate Davis was also using Inmate manufactured extension cords and plugs with multiple receptacles which can over load circuits and cause shock and fire hazards.
>
> I also found 5 razors used in box cutter, one utility razor and a can lid altered for a cutting device in Inmate Davis' locker. The contraband noted in this report was verified by Sgt. Fowler and placed in the hot trash.

(Id. at 78, 80.) The disciplinary charge against petitioner was classified as a serious Division F offense. (Id. at 78.)

/////

3

On December 8, 2007, petitioner's prison disciplinary hearing on the November 30, 2007 RVR commenced.  (Id.)  Petitioner received copies of the RVR at least 24 hours in advance of the hearing.  (Id.)  Petitioner did not raise any objections to proceeding with the hearing and stated he was in good health.  (Id.) at 81.)  A staff assistant was not assigned on the grounds that petitioner was literate and spoke fluent English, he did not have a documented disability, the issues were not complex, and assistance was "not necessary to comprehend the nature of the charges or the proceedings."  (Id.)  An investigative employee was not assigned to petitioner on the grounds that the issues were not complex and did not require further investigation, petitioner's housing status was not changed, petitioner was able to collect and present evidence necessary for an adequate defense, and a determination had been made that additional information was not necessary for a fair hearing.  (Id.)  Petitioner entered a plea of "not guilty" to the charge and stated at the hearing only as follows: "All the stuff belonged to the guy next to me.  I did have the razors."  (Id. at 82.)  Petitioner did not request that any witnesses be called at this disciplinary hearing.  (Id.)

The Senior Hearing Officer found petitioner guilty of a violation of 15 CCR § 3006 for the specific act of possessing "contraband." (Id.)  According to the report of the hearing, petitioner's disciplinary conviction was based upon the statements of C/O Doane in the RVR. (Id.)  Petitioner was assessed a 30-day loss of time credits, a 30-day loss of privileges, and a 90-day loss of Friday visits.  (Id.)

**C. Disciplinary Conviction for Possession of Obscene Material**

On November 30, 2007, C/O Doane wrote an RVR charging petitioner with "obscenity" in violation of 15 California Code of Regulations (CCR) § 3006.  (ECF No. 24 at 69.)  Therein, Officer Doane alleged as follows:

> On 11-30-07, at approximately 1125 hours, while searching the bunk area of Inmate Davis, CDC # C-30385, 7-251-L, in a box with Inmate Davis' mail in it, I found an envelope with Inmate Davis' name on it.  In the envelope was a drawing of a woman having intercourse (sex) with a man exposing her breast.  Possessing pornography is not allowed a CDCR.  Inmate Davis is aware that he will be subjected to progressive discipline if found in possession of

/////

/////

4

pornography in the future.   Sergeant Abella verified that the drawing was pornography and the drawing was then destroyed.

(Id.)  The disciplinary charge against petitioner was classified as a serious Division F offense. (Id.)

On December 8, 2007, the prison disciplinary hearing on the November 30, 2007 RVR commenced.  (Id.)  Petitioner received copies of the RVR at least 24 hours in advance of the hearing.  (Id. at 70.)   Petitioner did not raise any objections to proceeding with the hearing and stated he was in good health.  (Id.)  A staff assistant was not assigned on the grounds that petitioner was literate and spoke fluent English, he did not have a documented disability, the issues were not complex, and assistance was "not necessary to comprehend the nature of the charges or the proceedings."  (Id.)  An investigative employee was not assigned to petitioner on the grounds that the issues were not complex and did not require further investigation, petitioner's housing status made it likely he could collect and present evidence necessary for an adequate defense, and a determination had been made that additional information was not necessary for a fair hearing.  (Id.)  Petitioner entered a plea of "not guilty" to the charge and stated merely:  "I didn't have it, it could have belonged to my bunkie."  (Id. at 71.)  Petitioner did not request that any witnesses be present at the disciplinary hearing.

The Senior Hearing Officer found petitioner guilty of a violation of 15 CCR § 3006 for the specific act of "obscenity."  (Id.)  According to the report of the hearing, petitioner's disciplinary conviction was based upon the statements of C/O Doane in the RVR.  (Id.)  However, the charge was reclassified as an "administrative level" violation and petitioner was not assessed any credit loss.  (Id.)

**D.  Post-Conviction Proceedings**

After exhausting the administrative appeals process, petitioner challenged his three prison disciplinary convictions in a petition for writ of habeas corpus filed in the Solano County Superior Court.  That court rejected petitioner's claims, ruling as follows:

> The Court has read and considered the Petition for Writ of Habeas Corpus ("petition") filed on August 12, 2009, in which petitioner, an inmate at CSP-Solano, complains that he was wrongfully found

5

1   guilty of smoking, possession of contraband, and possession of
2   obscene materials.   Petitioner also claims that the evidence
    presented at the disciplinary hearing was insufficient to support the
3   findings of guilt.  The Court now finds and orders the following:

4   Pursuant to Rule 260(a) and (e) of the California Rules of Court, the
    Court finds that petitioner fails to state a prima facie case
    establishing that he is entitled to relief.  (People v Duvall (1995) 9
5   Cal.4th 464, 474-475.)  The findings of guilt were based on the
    eyewitness account of Correctional Officer Doane, who reported
6   that he personally observed petitioner smoking a cigarette while in
    his bunk and that he found electronic contraband and an envelope
7   containing pornographic material in or around petitioner's locker.
    This constitutes some evidence in support of the decision of the
8   hearing officer.  (Superintendent, Mass. Corr. Inst., Walpole v. Hill
    (1985) 472 U.S. 445, 455; In re Wilson (1988) 202 Cal.App.3d 661,
9   670.)  In reviewing a prison's disciplinary decisions, the Court does
    not examine the entire record or independently assess witnesses or
10  the weight of the evidence.  (Hill, 472 U.S. at 455.)

11  Petitioner's claim that the three offenses constituted improper
    "stacking" is without merit.  Stacking is defined by the Department
12  of Corrections as "charging an inmate with multiple violations for
    an event which warrants a single report."  Petitioner was charged
13  with three distinct acts constituting violations of three separate
    regulations which could be separately charged and punished:
14  smoking, possession of the electronic contraband, and possession of
    obscene materials.
15
    Accordingly, the petition is denied.
16

17  (ECF No. 37-2 at 2-3.)

18          Petitioner subsequently challenged his prison disciplinary convictions in a petition for writ

19  of habeas corpus filed in the California Court of Appeal for the First Appellate District.  That

20  petition was summarily denied by order dated November 25, 2009.  (Id. at 6.)  Petitioner then

21  filed a petition for writ of habeas corpus in the California Supreme Court, which was also

22  summarily denied.  (ECF No. 37-3 at 98.)

23          On April 21, 2010, petitioner commenced this action by filing a federal petition for writ of

24  habeas corpus in the United States District Court for the Eastern District of California, in the

25  Yosemite/Fresno division.  (ECF No. 1.)  By order dated April 28, 2010, the case was transferred

26  to this court.  (ECF No. 2.)  Respondent subsequently filed a motion to dismiss, which was

27  granted with leave to file an amended petition also being granted.  (ECF No. 21).  On May 10,

28  /////

1    2011, petitioner filed a first amended habeas petition, upon which this matter proceeds.  (ECF No.

2    24.)

3         On January 23, 2013, respondent filed another motion to dismiss, in which he argued that

4    the habeas petition should be dismissed because petitioner had failed to establish that success on

5    the petition would necessarily shorten the duration of his confinement.  (ECF No. 32).  That

6    motion was denied by order dated August 8, 2013.  (ECF No. 36.)  Respondent filed an answer to

7    the petition on September 9, 2013.  (ECF No. 37.)

8    **II.  Standards of Review Applicable to Habeas Corpus Claims**

9         An application for a writ of habeas corpus by a person in custody under a judgment of a

10    state court can be granted only for violations of the Constitution or laws of the United States.  28

11    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

12    application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

13    Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir.

14    2000).

15         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

16    corpus relief:

17
18             An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the

19             claim -

20             (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

21             determined by the Supreme Court of the United States; or

22             (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

23             State court proceeding.

24         For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

25    holdings of the United States Supreme Court at the time of the last reasoned state court decision.

26    Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, ___ U.S.

27    ___, 132 S. Ct. 38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams

28    v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in

7

1   determining what law is clearly established and whether a state court applied that law

2   unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir.

3   2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of

4   Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not

5   announced." Marshall v. Rodgers, ___ U.S.___, ___,133 S. Ct. 1446, 1450 (2013) (citing Parker

6   v. Matthews, ___U.S.___, ___,132 S. Ct. 2148, 2155 (2012)).  Nor may it be used to "determine

7   whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if

8   presented to th[e] [Supreme] Court, be accepted as correct. Id.  Further, where courts of appeals

9   have diverged in their treatment of an issue, it cannot be said that there is "clearly established

10  Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

11          A state court decision is "contrary to" clearly established federal law if it applies a rule

12  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

13  precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

14  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

15  writ if the state court identifies the correct governing legal principle from the Supreme Court's

16  decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] Lockyer v.

17  Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

18  (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

19  court concludes in its independent judgment that the relevant state-court decision applied clearly

20  established federal law erroneously or incorrectly.  Rather, that application must also be

21  unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473

22  (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

23  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

24  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

25  'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

26  _____

27  [1]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,

28  384 F.3d 628, 638 (9th Cir. 2004)).

1    Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S.

2    652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

3    court, a state prisoner must show that the state court's ruling on the claim being presented in

4    federal court was so lacking in justification that there was an error well understood and

5    comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 131

6    S. Ct. at 786-87.

7         If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

8    court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

9    527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

10   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

11   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

12   de novo the constitutional issues raised.").

13        The court looks to the last reasoned state court decision as the basis for the state court

14   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

15   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

16   previous state court decision, this court may consider both decisions to ascertain the reasoning of

17   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

18   federal claim has been presented to a state court and the state court has denied relief, it may be

19   presumed that the state court adjudicated the claim on the merits in the absence of any indication

20   or state-law procedural principles to the contrary."  Richter, 131 S. Ct. at 784-85.  This

21   presumption may be overcome by a showing "there is reason to think some other explanation for

22   the state court's decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797,

23   803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

24   but does not expressly address a federal claim, a federal habeas court must presume, subject to

25   rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___,

26   ___, 133 S. Ct. 1088, 1091 (2013).

27        Where the state court reaches a decision on the merits but provides no reasoning to

28   support its conclusion, a federal habeas court independently reviews the record to determine

1  whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

2  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

3  review of the constitutional issue, but rather, the only method by which we can determine whether

4  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

5  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

6  reasonable basis for the state court to deny relief."  Richter, 131 S. Ct. at 784.

7          A summary denial is presumed to be a denial on the merits of the petitioner's claims.

8  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

9  just what the state court did when it issued a summary denial, the federal court must review the

10 state court record to determine whether there was any "reasonable basis for the state court to deny

11 relief."  Richter, 131 S. Ct. at 784.  This court "must determine what arguments or theories . . .

12 could have supported, the state court's decision; and then it must ask whether it is possible

13 fairminded jurists could disagree that those arguments or theories are inconsistent with the

14 holding in a prior decision of [the Supreme] Court."  Id. at 786.  The petitioner bears "the burden

15 to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v.

16 Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct. at 784).

17         When it is clear, however, that a state court has not reached the merits of a petitioner's

18 claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

19 habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

20 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

21 **III.  Petitioner's Claims**

22         **A.  Due Process**

23         Although petitioner articulates several separate grounds for federal habeas relief, his first

24 three claims comprise, in essence, one claim that his three prison disciplinary convictions were

25 not supported by sufficient evidence.  (ECF No. 24 at 5, 7, 8, 17.)  Petitioner also complains that

26 prison officials improperly failed to assign him an investigative employee at his disciplinary

27 hearings.  (Id. at 5, 30.)  In this regard, he contends that an investigative employee "could have

28 questioned staff and inmates and arranged petitioner's requested forensic testing (fingerprints,

1   call records check, etc.),” and could have testified about “the idiosyncracies of living in a

2   dormitory setting,” such as the inmates’ habit of placing contraband in another inmate’s space.

3   (Id. at 27, 30.)  Petitioner offers his own version of the events leading up to his disciplinary

4   convictions, including his opinion of the actions and motivations of C/O Doane.  (Id. at 18-26,

5   28-33.)  Generally, petitioner argues that the contraband found in his cell belonged to someone

6   else and that Officer Doane lied when he testified at petitioner’s disciplinary hearing that he had

7   observed petitioner smoking.  (Id. at 18-27.)  Finally, petitioner contends that the procedures for

8   prosecuting prison disciplinary violations by inmates is fundamentally unfair in that it favors the

9   account of the testifying prison officials over that of the inmate defendants.  (Id. at 36-37.)

10   Respondent argues that this court does not have jurisdiction over petitioner’s claims

11   because success on those claims would not affect the fact or duration of petitioner’s confinement.

12   (ECF No. 37 at 3.)  This argument was resolved adversely to respondent in connection with his

13   second motion to dismiss and the court will not revisit that issue.  (ECF No. 35.)  Accordingly,

14   the court will turn to address petitioner’s claims on the merits.

15   It is well established that inmates subjected to disciplinary action are entitled to certain

16   procedural protections under the Due Process Clause but are not entitled to the full panoply of

17   rights afforded to criminal defendants.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also

18   Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); United States v. Segal, 549 F.2d 1293,

19   1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the least

20   amount of due process along the prosecution continuum).  An inmate is entitled to advance

21   written notice of the charge against him as well as a written statement of the evidence relied upon

22   by prison officials and the reasons for any disciplinary action taken.  See Wolff, 418 U.S. at 563.

23   In the disciplinary hearing context, an inmate does not have a right to counsel, retained or

24   appointed, although illiterate inmates are entitled to assistance.  Id. at 570.

25   An inmate also has a right to a hearing at which he may “call witnesses and present

26   documentary evidence in his defense when permitting him to do so will not be unduly hazardous

27   to institutional safety or correctional goals.”  Wolff, 418 U.S. at 566.  See also Ponte v. Real, 471

28   U.S. 491, 495 (1985).  However, as a general rule, inmates “have no constitutional right to

1   confront and cross-examine adverse witnesses" in prison disciplinary hearings.  Ponte, 471 U.S.

2   at 510 (Marshall, J., dissenting).  See also Baxter v. Palmigiano, 425 U.S. 308, 322-23 (1976).

3   The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to

4   satisfy the Due Process Clause."  Wolff, 418 U.S. at 571.

5          The decision rendered on a disciplinary charge must be supported by "some evidence" in

6   the record.  Hill, 472 U.S. at 455.  A finding of guilt on a prison disciplinary charge cannot be

7   "without support" or "arbitrary."  Id. at 457.  The "some evidence" standard is "minimally

8   stringent," and a decision must be upheld if there is any reliable evidence in the record that could

9   support the conclusion reached by the fact finder.  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir.

10  1994) (citing Hill, 472 U.S. at 455-56 and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).

11  See also Burnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir. 1990); Zimmerlee v. Keeney, 831

12  F.2d 183, 186 (9th Cir. 1987).  Determining whether this standard is satisfied in a particular case

13  does not require examination of the entire record, independent assessment of the credibility of

14  witnesses, or the weighing of evidence.  Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir.

15  1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).  Indeed, in

16  examining the record, a court is not to make its own assessment of the credibility of witnesses or

17  re-weigh the evidence.  Hill, 472 U.S. at 455.  The question is whether there is any reliable

18  evidence in the record that could support the decision reached.  Toussaint, 801 F.2d at 1105.

19         Where a protected liberty interest exists, the requirements imposed by the Due Process

20  Clause are "dependent upon the particular situation being examined."  Hewitt v. Helms, 459 U.S.

21  460, 472 (1983).  The process due is such procedural protection as may be "necessary to ensure

22  that the decision . . . is neither arbitrary nor erroneous."  Washington v. Harper, 494 U.S. 210, 228

23  (1990).  In identifying the safeguards required in the context of disciplinary proceedings, courts

24  must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners"

25  and avoid "burdensome administrative requirements that might be susceptible to manipulation."

26  Hill, 472 U.S. at 454-55.  The requirements of due process in the prison context involve a

27  balancing of inmate rights and institutional security concerns, with a recognition that broad

28  /////

1   discretion must be accorded to prison officials.  Wolff, 418 U.S. at 560-63; see also Baxter, 425

2   U.S. at 324.

3          In this case, petitioner was given advance written notice of all three of the disciplinary

4   charges brought against him.  Petitioner was also given a written statement of the evidence relied

5   upon by prison officials and the reasons for the disciplinary actions taken against him.  A

6   disciplinary hearing was conducted on each of the three disciplinary charges.  Petitioner was

7   allowed to question C/O Doane at his disciplinary hearing on the smoking charge.  Petitioner did

8   not request the appearance of witnesses at his other disciplinary hearings on the other two

9   charges.  There is no evidence before this court suggesting that the hearing officers were biased or

10  impartial.

11         Finally, there was "some evidence" supporting the hearing officer's decision that

12  petitioner committed all three of the prison rules violations with which he was charged.

13  Specifically, with respect to all of the disciplinary charges, the testimony and/or statements by

14  C/O Doane constitutes "some evidence" to support the hearing officer's finding that petitioner

15  was guilty both of smoking and of possession of contraband.  Petitioner argues that C/O Doane

16  lied when he testified that he saw petitioner smoking.  However, as noted above, in reviewing

17  petitioner's due process claim this court must accept the hearing officer's assessment of the

18  credibility of witnesses and may not make its own assessment or re-weigh the evidence.  Hill, 472

19  U.S. at 455.  Petitioner also implies that the obscene material found in his cell should have been

20  produced at the prison disciplinary hearing on that charge.  However, production of the actual

21  evidence found in petitioner's cell is not required under the Due Process Clause.  See Mancilla v.

22  Biter, No. 1:13-dv-01724-BAM-HC, 2013 WL 6070417, at *6 (E.D. Cal. Nov. 18, 2013) ("there

23  is no legal requirement under federal law that the prison authorities produce any specific

24  evidence" at a prison disciplinary hearing); Crismond v. Sandon, No. CV 12-3572-ODW (VBK),

25  2013 WL 1759924, at * 7 (C.D. Cal. Mar. 26, 2013) ("The Supreme Court has never recognized a

26  due process right to the preservation and testing of physical evidence in the prison disciplinary

27  context."); see also White v. Superintendent, No. 3:13 CV 300, 2013 WL 6512671, at *3 (N.D.

28  Ind. Dec. 11, 2013) ("The hearing officer was not required to produce physical evidence to

13

1  support the charge . . . .").  In any event, petitioner has not demonstrated that he requested that

2  any specific evidence be collected or presented on his behalf at or prior to any of his disciplinary

3  hearings.[2]

4         Prison authorities were not required under the Due Process Clause to assign a staff or

5  investigative assistant at petitioner's disciplinary hearings.  The Supreme Court has instructed that

6  an inmate should be provided assistance from a fellow inmate or staff member where the inmate

7  is illiterate or the issue is so complex that it is unlikely that the inmate could gather and present

8  evidence necessary for an adequate comprehension of the case.  Wolff, 418 U.S. at 570.  None of

9  these considerations is present here.  Prison officials found before each disciplinary hearing that

10  petitioner was not illiterate and that the issues involved in his disciplinary proceedings were not

11  complex.  Moreover, petitioner does not argue to the contrary.  Under these circumstances, the

12  federal constitution did not require prison officials to provide petitioner with an investigative

13  employee at his three disciplinary hearings.  See Hardney v. Sullivan, No. CIV S-07-0574 JCC,

14  2009 WL 1067244, at *5 (E.D. Cal. Apr. 21, 2009) (noting that the United States Supreme Court

15  "has never set forth" a requirement that an investigative employee be provided at prison

16  disciplinary proceedings).

17         Petitioner was afforded all the process that was due him under the federal Constitution in

18  the context of his prison disciplinary proceedings.  Accordingly, he is not entitled to federal

19  habeas relief with respect to any of his due process claims.

20         **B.  Equal Protection**

21         In his fourth and final ground for federal habeas relief, petitioner claims that he "has been

22  deprived of his equal protection rights under the 14 Amendment, as he was not treated like

23  inmates in the same situation/similarly situated."  (ECF No. 24 at 10.)  Petitioner argues that

24  "California has two sets of rules" for processing disciplinary proceedings:  one for inmates "with

25  _____

26  [2]  Under the circumstances presented here, Officer Doane's testimony and statements, standing
   alone, were sufficient to support petitioner's three disciplinary convictions.  See Carter v.

27  Workman, No. 04-6252, 121 Fed. Appx. 793, 796 (10th Cir. Jan. 27, 2005) (where the hearing
   officer received and believed the reporting officer's statement, that statement constituted "some

28  evidence" under Hill).

1    confirmed release dates," and one for inmates "without confirmed release dates (Life Term

2    Prisoners)." (Id. at 34-35.)  He contends that "all courts" may dismiss a habeas petition filed by a

3    life prisoner on the grounds that a loss of time credits may not affect his eligibility for parole.

4    (Id.)  He also asserts that any disciplinary conviction suffered by a life prisoner will almost

5    certainly affect his ability to be released on parole.  (Id.)  On the other hand, according to

6    petitioner, habeas petitions filed by non-life prisoners who have received a loss of time credits

7    will always be addressed by "the courts," and in most cases the lost time will be restored to the

8    inmate.  (Id.)  Petitioner explains that non-life term prisoners "can lose from 1 day to 180 days for

9    one R.V.R., while the lifer can be denied 3 to 15 years on just 1 R.V.R." (Id. at 35.)  Petitioner

10   argues this situation he describes violates the Equal Protection Clause because he is "being

11   treated differently just because of his life term." (Id. at 35.)  Petitioner explains that his claim in

12   this regard is "about the procedure and process being fair." (Id. at 34.)

13        The Equal Protection Clause "embodies a general rule that States must treat like cases

14   alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997) (citing

15   Plyler v. Doe, 457 U.S. 202, 216 (1982) and Tigner v. Texas, 310 U.S. 141, 147 (1940)).  The

16   Fourteenth Amendment "guarantees equal laws, not equal results." McQueary v. Blodgett, 924

17   F.2d 829, 835 (9th Cir. 1991) (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 273 (1979)).  A

18   habeas petitioner has the burden of alleging facts sufficient to establish "a prima facie case of

19   uneven application." McQueary, 924 F.2d at 835.  Moreover, "a mere demonstration of

20   inequality is not enough . . . .  There must be an allegation of invidiousness or illegitimacy in the

21   statutory scheme before a cognizable claim arises." Id.

22        Here, petitioner has failed to demonstrate that he was treated any differently in the

23   disciplinary or parole process by virtue of his status as a life term inmate.  All inmates who are

24   similarly situated to him are subject to the same rules with regard to eligibility for parole and the

25   to the same procedures for the processing of prison disciplinary charges.  Petitioner has also

26   failed to demonstrate that he was unable to process his habeas claims in state or federal court.

27   The state courts' rejection of petitioner's equal protection claim is not contrary to or an

28   /////

15

1   unreasonable application of federal law.  Accordingly, petitioner is not entitled to federal habeas

2   relief on that claim.

3   **C.  State Law Claims**

4   To the extent petitioner is claiming his prison disciplinary convictions violated state law

5   or California regulations, he has failed to state a cognizable federal habeas claim.  As noted

6   above, the federal writ is not available for alleged error in the application of state law, and habeas

7   corpus cannot be utilized in federal court to try state issues de novo.  Milton v. Wainwright, 407

8   U.S. 371, 377 (1972).  Challenges to a state court's interpretation of state law are not cognizable

9   in a federal habeas corpus proceeding.  See Waddington v. Sarausad, 555 U.S. 179, 192 n.5

10  (2009) ("[W]e have repeatedly held that 'it is not the province of a federal habeas court to

11  reexamine state-court determinations on state-law questions.");  Rivera v. Illinois, 556 U.S. 148,

12  158 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting Engle v.

13  Isaac, 456 U.S. 107, 121, n.21 (1982) and Estelle, 502 U.S. at 67, 72-73);  Bradshaw v. Richey,

14  546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court

15  sitting in federal habeas");  Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (federal habeas corpus

16  relief does not lie for errors of state law).

17  Further, a habeas petitioner may not "transform a state-law issue into a federal one"

18  merely by asserting a violation of the federal constitution.  Langford v. Day, 110 F.3d 1380, 1389

19  (9th Cir. 1997).  Rather, petitioner must show that the decision of the state courts somehow

20  "violated the Constitution, laws, or treaties of the United States."  Little v. Crawford, 449 F.3d

21  1075, 1083 (9th Cir. 2006) (quoting Estelle, 502 U.S. at 68).  Based on these authorities,

22  petitioner is not entitled to federal habeas relief on any claim that his disciplinary convictions

23  violated either state law or California regulations governing prisons.

24  **IV.  Conclusion**

25  Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that

26  petitioner's application for a writ of habeas corpus be denied.

27  These findings and recommendations are submitted to the United States District Judge

28  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

16

1  after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

4  shall be served and filed within fourteen days after service of the objections.  Failure to file

5  objections within the specified time may waive the right to appeal the District Court's order.

6  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

7  1991).  In his objections petitioner may address whether a certificate of appealability should issue

8  in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

9  Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

10  enters a final order adverse to the applicant).

11  Dated:  February 26, 2014

12

13  _Dale A. Drozd_

14  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

15  DAD:8:
   Davis1029.hc

16

17

18

19

20

21

22

23

24

25

26

27

28